IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| JTH TAX, LLC *d/b/a Liberty Tax Service*, <br><br> Plaintiff, <br><br> v. <br><br> VERONICA MANZO, *individually and d/b/a Latina Income Tax*, <br><br> Defendant. | Case No. 2:24-cv-505 |

**OPINION & ORDER**

In this breach of contract case, Plaintiff JTH Tax, LLC d/b/a Liberty Tax Service ("Liberty") requests default judgment on three claims against a former franchisee, Defendant Veronica Manzo. ECF Nos. 13. Liberty also seeks an injunction requiring the defendant to return all confidential information she obtained through her affiliation with Liberty and preventing the defendant from soliciting former Liberty clients or conducting a tax return business within the period identified in the parties' franchise agreement. ECF No. 14. For the reasons explained herein, the motion will be **GRANTED.**

**I.   BACKGROUND**

Liberty filed its Complaint on August 9, 2023, alleging (1) that the defendant breached contractual obligations to Liberty under their franchise agreement, ECF No. 1 ¶¶ 107–117, 125–134; (2) that the defendant failed to return property to Liberty,

*id.* ¶¶ 136–144; and (3) that the defendant misappropriated Liberty's trade secrets after the franchise agreement was terminated, *id.* ¶¶ 146–164.

Liberty timely served the defendant on September 16, 2024. ECF No. 8 at 1. The defendant failed to submit an answer or other responsive pleading. The Clerk entered a default on October 16, 2024, ECF No. 12, and Liberty filed this Motion for Default Judgment, ECF No. 13.[1]

## II. LEGAL STANDARDS

### A. Motion for Default Judgment

Once a defendant is served process, they have 21 days to respond. Fed. R. Civ. P. 12(a)(1)(A)(i). When a plaintiff shows that a defendant has failed to file responsive pleadings, the Clerk "must enter" a default, which amounts to an automatic admission of all allegations in the complaint that do not deal with the amount of damages. Fed. R. Civ. P. 55(a); Fed. R. Civ. P. 8(b)(6). After the Clerk enters a default, a plaintiff who seeks a default judgment on a claim that is not for a sum certain must "apply to the court for a default judgment." Fed R. Civ. P. 55(b).

Whether to grant a motion for default judgment is a matter for the court's discretion. *Consol. Masonry & Fireproofing, Inc. v. Wagman Const. Co.*, 383 F.2d 249, 251 (4th Cir. 1967). The Fourth Circuit strongly prefers that courts adjudicate cases on the merits and has encouraged district courts to construe Rule 55(c) liberally, in order to deny motions for default judgment. *See, e.g., Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 421 (4th Cir. 2010); *Tolson v. Hodge*, 411 F.2d

---

[1] This matter was reassigned to this Court on August 14, 2024. ECF No. 5.

123, 130 (4th Cir. 1969). However, default judgments are warranted when a defendant fails to appear or participate. *Fed. Trade Comm'n v. Pukke*, 53 F.4th 80, 106 (4th Cir. 2022); *see Chafin v. Chafin*, 568 U.S. 165, 175 (2013).

Courts in this district have found that default judgment should be granted when the defaulting party's unresponsiveness has halted the adversary process. *E.g.*, *JTH Tax, Inc. v. White*, No. 2:22-cv-272, 2023 WL 3321737, at *6 (E.D. Va. May 9, 2023); *Walsh v. Heavenly Hands Home Healthcare LLC*, No. 2:22-cv-237, 2022 WL 18777533, at *5 (E.D. Va. Sept. 1, 2022); *Alstom Power, Inc. v. Graham*, No. 3:15-cv-174, 2016 WL 354754, at *3 (E.D. Va. Jan. 27, 2016).

Because the defendant, by defaulting, has admitted the facts alleged in the complaint, the Court must determine whether the plaintiff's allegations are sufficient for judgment to be entered. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). In other words, the Court must decide whether the complaint contains adequate factual materials to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Finally, if the moving party seeks a judgment on damages, the court has discretion over how damages may be shown. *Transp. Dist. Comm'n of Hampton Roads v. U.S. Workboats, Inc.*, No. 2:21-cv-181, 2021 WL 8445262, at *4 (E.D. Va. Sept. 17, 2021); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—*other than one relating to the amount of damages*—is admitted if a responsive pleading is required and the allegation is not denied.") (emphasis added).

B.   **Permanent Injunctions**

To obtain a permanent injunction, a plaintiff must plead facts sufficient to demonstrate four factors: "(1) that it has suffered an irreparable injury; (2) that remedies available at law are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *Legend Night Club v. Miller*, 637 F.3d 291, 297 (4th Cir. 2011).

## III.   ANALYSIS

A.   **Jurisdiction and Venue**

This Court has subject matter jurisdiction under 28 U.S.C. § 1332. Liberty is a Delaware corporation with its principal place of business in Virginia, and the defendant is domiciled in Nevada, so there is complete diversity between the parties. ECF No. 1 ¶¶ 7–15. The amount in controversy exceeds $75,000.[2]

When parties to a contract confer personal jurisdiction and venue on a particular court, the court honors that agreement as long as it is not unreasonable. *Albemarle Corp. v. AstraZeneca UKLtd.*, 628 F.3d 643, 651 (4th Cir. 2010). The defendant consented to suit in the United States District Court for the Eastern

---

[2] The Complaint's jurisdiction section explicitly states that the amount in controversy exceeds $75,000, and nothing else in the Complaint directly contradicts that statement. ECF No. 1 ¶ 18. The Court finds no evidence that the plaintiff's statement of the amount in controversy was not made in good faith. *See Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014) (an "amount-in-controversy allegation is accepted if made in good faith.").

District of Virginia when she signed a franchise agreement that contained a forum selection clause naming this as the proper court. *See* ECF No. 1-3 at 25. The Court finds that agreement is reasonable,[3] so the Court has personal jurisdiction over the defendant. *See Albermarle*, 628 F.3d at 651 (standard for reasonableness).[4]

### B. Default Judgment is Appropriate and Reasonable

The Court would prefer to decide this case on the merits, but the defendant's nonresponse makes that impossible. *See Colleton Preparatory Acad.*, 616 F.3d at 417. By failing to file responsive pleadings for over four months, the defendant has brought

---

[3] There is no evidence before the Court that the formation of the parties' forum selection clause "was induced by fraud or over-reaching," neither party will be "deprived of their day in court" because of "grave inconvenience or unfairness" if the Court enforces the clause, the chosen law is not "fundamental[ly] unfair[]," and enforcing the forum clause would not "contravene a strong public policy" of the state of Virginia. *See Albemarle Corp.*, 628 F.3d at 651.

[4] Even if the forum selection clause in the parties' contract does not settle the issue, jurisdiction and venue are proper. This Court has personal jurisdiction over the defendant under Virginia's long-arm statute, which states that "transacting any business in this Commonwealth" is sufficient to confer personal jurisdiction. Va. Code § 8.01-328.1(A)(1). As a franchisee of a Virginia company, Defendant Manzo transacted business here and is subject to personal jurisdiction in Virginia.

This Court's exercise of personal jurisdiction also comports with the Due Process Clause of the United States Constitution, which permits personal jurisdiction where a defendant has minimum contacts with the state such that the defendant should "reasonably anticipate being haled to court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 943 (4th Cir. 1994). Because the defendant contracted with a company with its principal place of business in Virginia, she should reasonably anticipate that Liberty might seek to enforce its contract rights here.

Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), because this contract dispute arises from a franchise agreement with a Virginia Beach, Virginia corporation.

the adversary process to a standstill. Therefore, the Court finds default judgment appropriate.

The parties agreed in their contract that Virginia law would govern disputes between them, so the Court applies Virginia law to the facts alleged and admitted. ECF No. 1-3 at 25.

### *i.* *Breach of Contract*

In Virginia, "[t]he elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 594 S.E.2d 610, 614 (2004). The defendant is obligated to the plaintiff under a franchise agreement enacted on December 3, 2019. ECF No. 1-3 at 30. Liberty terminated the defendant's franchise agreement on August 28, 2023, ECF No. 1 ¶ 55; ECF No. 1-5, but the defendant has since violated the post-termination covenants in the franchise agreement in several ways:

1. Under § 9(d), the defendant was obligated to "[p]ay to Liberty all amounts owing to Liberty." ECF No. 1-3 at 18. The defendant breached this obligation by failing to pay her $165,722.96 debt upon termination of the franchise agreement. ECF No. 1 ¶¶ 56, 58; ECF No. 1-6.

2. Under § 9(e), the defendant was obligated to "transfer to Liberty all telephone numbers, email accounts, URLs, domain names, internet accounts, cloud server accounts, listings and advertisements used in relation to the Franchised Business." ECF No. 1-3 at 18. The defendant breached those obligations by failing to transfer the agreed upon information to Liberty upon termination of the franchise agreement. ECF No. 1 ¶ 86.

6

3. Under section 9(g), the defendant was obligated to return to Liberty lists containing the names and contact information of franchise customers. ECF No. 1-3 at 19. The defendant breached this obligation by failing to return "customer lists" after Liberty terminated the franchise agreement. ECF No. 1 ¶ 86.

4. Under § 9(h), the defendant was obligated to return to Liberty its "customer tax returns, files, and records." ECF No. 1-3 at 19. The defendant breached this obligation by failing to remit "tax returns" after Liberty terminated the agreement. ECF No. 1 ¶ 86.

5. Under § 9(i), the defendant was obligated to return her copy of the Liberty operations manual. ECF No. 1-3 at 19. The defendant breached this obligation by failing to return the manual after Liberty terminated the agreement. ECF No. 1 ¶ 86.

6. Under § 10(b), the defendant was obligated not to compete with Liberty by "directly or indirectly, for a fee or charge, prepar[ing] or electronically fil[ing] income tax returns . . . within the Territory or within twenty-five miles of the Territory" for a period of "two [] years following the termination" of the franchise agreement. ECF No. 1-3 at 19. The defendant breached this obligation by operating a competing income tax preparation business, "Latina Income Tax," within one mile of where the defendant previously operated her Liberty franchise office. ECF No. 1 ¶ 60.

7. Under § 10(d), the defendant was obligated not to solicit any of her previous customers within 25 miles of "the boundaries of the Territory" for a two-year period after Liberty terminated the agreement. ECF No. 1-3 at 20 (contract term), 32 (defining the franchise "Territory"). The defendant breached this obligation by placing "solicitation phone calls" to her previous customers to offer tax preparation services with her competing tax business. ECF No. 1 ¶ 85; *see also id.* ¶ 60.

The Court further finds the affidavit of Rory Walters, which the plaintiff submitted in connection with its claimed damages under Count Two, supports a finding that the defendant owed $165,722.96 in accounts receivable to Liberty, reflecting the past due amounts of royalties and fees due, under the franchise agreement. ECF No. 14-1 ¶ 10. The Walters affidavit also supports a finding that the defendant owed $54,657.30 in royalties and advertising fees pursuant to § 10(c) of the franchise agreement. *Id.* ¶ 14.[5]

The plaintiff has provided the Court with sufficient evidence to determine its damages as to Count Two. Accordingly, the Motion for Default Judgment will be **GRANTED** as to Count Two. The plaintiff will be awarded a total of $220,380.26 in monetary damages, consisting of $165,722.96 in unpaid accounts receivable and $54,657.30 in amounts owed under § 10(c) of the franchise agreement.

---

[5] The franchise agreement requires the defendant to pay Liberty, as a result of termination, "royalties and advertising fees as set forth in [the] [a]greement," based on her earnings during [her] last fiscal year (May 1–April 30) of operation . . . multiplied by two." ECF No. 1-3 at 19–20; *see* ECF No. 14-1 ¶ 12. Under the agreement, the defendant promised to pay 14% of her gross receipts as an annual royalty and 5% of her gross receipts as a monthly advertising fee. ECF 1-3 at 6–7; *see* ECF No. 14-1 ¶ 12. The gross receipts for the last fiscal year of the defendant's Liberty franchise were $143,835.00. ECF No. 14-1 ¶ 13. Therefore, the defendant owed Liberty $54,657.30 (19% of the her gross receipts, multiplied by two), per the terms of the agreement.

### ii. Conversion

In Virginia, "[c]onversion is a wrongful exercise or assumption of authority over another's goods that deprives the owner of possession, or an act of dominion wrongfully exerted over property in denial of, or inconsistent with, the owner's right." *Mackey v. McDannald*, 842 S.E.2d 379, 387 (2020).

Liberty owned confidential information, including client lists, tax return files, and an operations manual, which the parties' franchise agreement required the defendant to return to Liberty once that agreement was terminated. ECF No. 1 ¶¶ 136–38; ECF No. 1-3 at 18–19. The defendant had a right to use that information to operate a Liberty franchise, but she did not acquire a property interest in the information. *see* ECF No. 1 ¶ 137. After Liberty terminated the defendant's franchise agreement, the defendant failed to return client lists, tax return files, and the operation manual to Liberty. ECF No. 1 ¶ 140. In doing so, the defendant wrongfully exerted dominion over the clients' files, contrary to Liberty's ownership right.

The Motion for Default Judgment will be **GRANTED** as to Count Three.

### iii. Defend Trade Secrets Act

Under the Defend Trade Secrets Act ("DTSA"), "[a]n owner of a trade secret that is misappropriated may bring a civil action . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). "The DTSA defines trade secrets as all forms and types of financial, business, scientific, technical, economic, or engineering information that the owner thereof has taken reasonable measures to keep . . . secret.'" *Space*

9

*Sys./Loral, LLC v. Orbital ATK, Inc.*, 306 F. Supp. 3d 845, 853 (E.D. Va. 2018) (quoting 18 U.S.C. § 1839(3)) (quotation marks and alterations omitted). Trade secret information must "derive[] independent economic value . . . from not being generally known . . . ." 18 U.S.C. § 1839(3). To state a claim under the DTSA, a plaintiff must allege that "(1) it owns a trade secret; (2) the trade secret was misappropriated; and (3) the trade secret implicates interstate or foreign commerce." *Space Sys./Loral*, 306 F. Supp. 3d at 853 (citing 18 U.S.C. § 1836(b)(1)).

The Complaint plausibly alleges that Liberty owns a trade secret. Liberty provides factual information regarding the nature of the information it considers to be trade secrets: "Liberty's Operation Manuals, training manuals, training programs, methods of operation, marketing strategies, marketing programs, customer lists, and customer information." ECF No. 1 ¶ 147. From the description of the trade secrets in the Complaint, the Court finds that the information is "business information" within the meaning of 18 U.S.C. § 1839(3).

Taking the facts of the Complaint as true, the Court finds that Liberty took reasonable measures to keep its alleged trade secrets private, "as they are disclosed only to franchisees in the operation of a franchise business pursuant to a franchise agreement," and "Liberty limits the disclosure of its trade secrets to franchisees who execute a franchise agreement." ECF Nos. 1 ¶¶ 151, 155. Further, the plaintiff sufficiently pleads that it derived independent economic value from keeping the information secret, because they "give [Liberty] a competitive advantage by providing it with a pool of customers to draw business from each tax season." *Id.* ¶¶ 148–49.

The Complaint also sufficiently alleges that Defendant Manzo misappropriated Liberty's trade secrets. The DTSA defines misappropriation as the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or [] disclosure or use of a trade secret of another without express or implied consent . . . ." 18 U.S.C. § 1839(5). The Complaint alleges the defendant "agreed that upon termination of the Franchise Agreement, she would never use, disclose, or permit the use or disclosure of Liberty's trade secrets in any manner whatsoever, and that they would immediately return all Liberty Confidential Information, including trade secrets, upon termination," but that she failed to keep those promises. ECF No. 1 ¶ 157, *e.g.*, *id.* ¶ 114. These facts, taken as true, demonstrate that the defendant "used improper means to acquire knowledge of the trade secret." 18 U.S.C. § 1839(5). The Court can reasonably infer that the defendant knew that the information Liberty gave her constituted trade secrets, given the contractual language in the franchise agreement requiring her to return the information upon termination of the agreement. Therefore, the Complaint adequately alleges that the defendant misappropriated Liberty's trade secrets by failing to return the information after the termination of her franchise agreement.

Finally, the Complaint sufficiently alleges Liberty's trade secrets implicate interstate commerce. The Complaint alleges that Liberty's confidential information and operations manual "is provided to Liberty franchisees throughout the country, and it contains valuable information concerning the policies and procedures that each franchisee in Liberty's interstate network of franchisees must adhere to, including,

policies and procedures concerning marketing, management, software, technology, security, compliance, customer support, employee training, and site selection." ECF No. 1 ¶ 161. Therefore, Liberty's trade secrets "relate[] to services used and intended for use in interstate [] commerce." *Space Sys.*, 306 F. Supp. 3d at 854.

The plaintiff requests a civil seizure remedy under the DTSA. ECF No. 1 ¶ 167. "A court may issue a seizure order only if, among other requirements, an order under Fed. R. Civ. P. 65 or another form of equitable relief would be inadequate." *OOO Brunswick Rail Mgmt. v. Sultanov*, No. 5:17-cv-17, 2017 WL 67119, at *2 (N.D. Cal. Jan. 6, 2017) (citing 18 U.S.C. § 1836(b)(2)(A)(ii)). A seizure order should be issued "only in extraordinary circumstances." *Id.* The Court finds that the circumstances at issue are not extraordinary and that another form of equitable relief—an injunction—would be adequate in this case. Accordingly, default judgment will be **GRANTED** as to Count Four. However, because the Court will grant the plaintiff's request for a permanent injunction, *infra*, the Court will not issue a seizure order.[6]

---

[6] It appears to the Court that Liberty has abandoned Count V for Unfair Competition by not seeking default judgment on that count. Accordingly, Count V will be **DISMISSED**.

### C. Permanent Injunction

In addition to damages for breach of contract, conversion, and misappropriation of trade secrets, the Complaint seeks an injunction requiring the defendant to comply with the post-termination obligations under the franchise agreement. ECF No. 1 at 24–26, 33–34.[7]

#### i. *Irreparable Harm*

The Supreme Court has cautioned that "mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough" for a finding of irreparable harm, especially when future litigation could provide a remedy. *Sampson v. Murray*, 415 U.S. 61, 90 (1974); *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 694 (4th Cir. 1994). However, there is a pattern of decisions in this district where courts have found irreparable harm to Liberty, and granted injunctions, when the admitted facts established that a Liberty franchisee actually operated a competing tax preparation business. *E.g.*, *JTH Tax, Inc. v. White*, No. 2:22-cv-272, 2023 WL 3321737, at *9 (E.D. Va. May 9, 2023); *JTH Tax, Inc. v. Lee*, 514 F. Supp. 2d 818, 825–26 (E.D. Va. 2007); *JTH Tax, Inc. v. Smith*,

---

[7] Count One of the Complaint, which is entitled "Breach of the Franchise Agreement (Equitable Claim)," appears to couch the plaintiff's request for a permanent injunction as a standalone claim. But "[a]n injunction is a form of remedy, not an independently cognizable cause of action." *Apex Adv. Tech. LLC v. RMSI Private Ltd.*, No. 1:21-cv-1400, 2022 WL 4826335, at *7 (E.D. Va. Sep. 30, 2022) (quoting *OROS, Inc. v. Dajani*, No. 1:19-cv-351, 2019 WL 2361047, at *5 (E.D. Va. June 4, 2019)). Therefore, the Court will **DISMISS** Count I but will consider the factual allegations therein when determining whether the Complaint sufficiently establishes that the plaintiff is entitled to a permanent injunction.

No. 2:06-cv-76, 2006 WL 1982762, at *1 (E.D. Va. June 23, 2006) (injunction issued separately).

Liberty claims that, in addition to money damages resulting from the breaches of contract alleged in Count Two, the defendant's "unlawful competition has irreparably harmed, and continues to irreparably harm, Liberty through loss of customer goodwill and loyalty; loss of business opportunities and relationships to provide tax preparation services and related services; loss of customers; loss of franchisee stability; loss of ability to sell other franchises; and loss of competitive advantage in the NV004 area." ECF No. 1 ¶ 95. The Complaint further alleges the defendant "is now depriving Liberty of this goodwill and loyalty by operating a competing business in her former Liberty franchise territory, and less than a mile from her former Liberty franchise location." *Id.* ¶ 97. At the defendant's competing tax business, the Complaint alleges, the defendant is "(a) using Liberty's Confidential Information; (b) employing Liberty's former employees; (c) offering promotions identical to Liberty; and (d) soliciting the same customers as her former Liberty office." *Id.* ¶ 91.

The Fourth Circuit has upheld a district court's finding that possible future loss of reputation and goodwill constituted irreparable injury, indicating that "the threat of a permanent loss of customers and the potential loss of goodwill also support a finding of irreparable harm." *Multi–Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 552 (4th Cir. 1994); *see also JTH Tax, Inc. v. Donofrio*, No. 2:06-cv-47, 2006 WL 2796841, at *5 (E.D. Va. Sept. 26, 2006) (finding

that a "continued breach" creates a "high likelihood of permanent loss of former and potential customers"). Because the defendant sought to draw customers away from Liberty, and she actually operated[8] a business that competed with Liberty, the Court finds that the harm the defendant caused by soliciting Liberty customers is irreparable.

### ii. *Adequacy of Legal Remedies*

The Fourth Circuit has typically considered the adequacy of legal remedies as part of the irreparability analysis. *See Multi-Channel TV Cable Co.*, 22 F.3d at 552 (counting the difficulty of ascertaining the plaintiff's monetary damages as a reason his harm was irreparable); *Blackwelder Furn. Co. v. Seilig Mfg. Co., Inc.*, 550 F.2d 189, 197 (4th Cir.1977) ("Irreparability of harm includes the impossibility of ascertaining with any accuracy the extent of the loss."). Therefore, for the reasons previously outlined, the Court finds that legal remedies cannot fully compensate Liberty for the harm of losing unknown future customers due to the defendant's operation of a competing tax preparation business.

### iii. *Balance of Hardships*

The injunction Liberty seeks amounts to nothing more than enforcement of the defendant's contractual obligations. *See, e.g., Lee*, 514 F. Supp. 2d at 825. It would require the defendant to return client lists, tax return files, and the operations manual to Liberty, and it would restrict the defendant from operating a tax

---

[8] The Complaint sufficiently alleges facts to demonstrate that the defendant is operating a competing income tax preparation business called "Latina Income Tax." *See* ECF No. 1 ¶¶ 65–70.

preparation business within a certain area of Sparks, Nevada, until December 3, 2026. *See* ECF No. 1-3 at 4 (establishing a term ending five years from the franchise agreement's effective date), 20 (noncompete obligations lasting two years from termination of the agreement), 30 (effective date of December 3, 2019). The defendant would be free to operate any other kind of business in the restricted area or to operate a tax preparation business elsewhere, until the restricted period elapsed. In contrast, denying the request for an injunction would leave open the potential for ongoing economic and reputational harm to Liberty. Therefore, the Court finds that the balance of the hardships favors granting the injunction.

### iv. *Public Interest*

Finally, the Court considers whether an injunction requiring the defendant to return Liberty's property and to stop running a competing business for two years would be in the public interest. Courts in this district have found that "enforcing legitimate noncompete obligations serves the public interest in preventing consumer confusion." *Lee*, 514 F. Supp. 2d at 826 (internal citation and punctuation omitted); *see Lorillard Tobacco Co. v. S & M Brands, Inc.*, 616 F. Supp. 2d 581, 589 (E.D. Va. 2009) (describing "wide public interest in fair competition and avoiding confusion in the marketplace"). This Court agrees with that reasoning, especially in the context of a franchise business, where contractual noncompete agreements protect the franchise mark, for the benefit of the franchisor and future franchisees. *See id*. For these reasons, the Court finds that the fourth factor also favors granting an injunction.

Accordingly, Liberty's request for an injunction will be **GRANTED**. The defendant is **ORDERED** to return to Liberty all confidential information that is Liberty's property, including client lists, tax return files, and the operations manual.

The defendant is **ENJOINED** from soliciting former Liberty clients or conducting a tax return business within the restricted area identified in her franchise agreement, until December 3, 2026.

## V.  CONCLUSION

Plaintiff JTH Tax, LLC's Motion for Default Judgment is **GRANTED.** It is **ORDERED** that a judgment be entered in favor of the plaintiff in the amount of $220,380.26, which consists of $165,722.96 in unpaid accounts receivable and $54,657.30 in amounts owed under § 10(c) of the franchise agreement. Post-judgment interest shall be calculated in the manner set forth in 28 U.S.C. § 1961.

Defendant Veronica Manzo is **ORDERED** to return to Liberty all confidential information that is Liberty's property, including client lists, tax return files, and its operations manual.

The defendant is **ENJOINED** and **RESTRAINED** from soliciting former Liberty clients or conducting a tax return business within the restricted area identified in the defendant's franchise agreement with Liberty, until after December 3, 2026.

The plaintiff's Motion for Preliminary Injunction (ECF No. 2) is **DENIED AS MOOT**.

Count V of the Complaint (ECF No. 1) is **DISMISSED**.

The plaintiff is **DIRECTED** to file a petition for attorney's fees by February 17, 2024.

The Clerk is **DIRECTED** to send a copy of this Opinion and Order to all counsel of record and to the defendant at the address including in the Summons (ECF No. 7) and the address listed in the Certificate of Service attached to the plaintiff's motion for default judgment (ECF No. 14 at 39).

**IT IS SO ORDERED.**

/s/
Jamar K. Walker
United States District Judge

Norfolk, Virginia
December 18, 2024