IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| JTH TAX, LLC *d/b/a Liberty Tax Service*, <br><br> Plaintiff, <br><br> v. <br><br> VERONICA MANZO, *individually and d/b/a Latina Income Tax*, <br><br> Defendant. | Case No. 2:24-cv-505 |

**OPINION & ORDER**

In this breach of contract case, Plaintiff JTH Tax, LLC d/b/a Liberty Tax Service ("Liberty") submits an unopposed petition for attorneys' fees and costs. ECF No. 17. For the reasons stated herein, the petition will be **GRANTED WITH MODIFICATIONS**.

**I.    BACKGROUND**

This demand for attorneys' fees and costs arises out of a contract dispute between Liberty and Defendant Veronica Manzo. Liberty filed its Complaint on August 9, 2023. Liberty timely served the defendant, after which the defendant failed to appear, answer, or submit any responsive pleading. Liberty filed its Motion for Default Judgment, and this Court granted the default judgment on December 18, 2024. ECF Nos. 13, 15.

In the Opinion and Order granting default judgment,[1] the Court held that (1) the defendant breached a franchise contract with Liberty, ECF No. 15 at 6–8; (2) failed to return Liberty's property after the agreement was terminated, *id.* at 9; and (3) misappropriated Liberty's trade secrets, in violation of the Defense Trade Secrets Act (DTSA),[2] *id.* at 9–12. Likewise, Liberty's request for an injunction was granted.

Liberty subsequently moved for attorneys' fees and costs from the commencement of this lawsuit up to the default judgment.[3] ECF No. 18-1 ¶ 4.

## II. LEGAL STANDARD

Under the American Rule, a prevailing litigant is generally not entitled to recover attorneys' fees from the non-prevailing litigant unless a statute or contract provides otherwise. *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015). Pursuant to Virginia law,[4] "parties are free to draft and adopt contractual provisions shifting the responsibility for attorneys' fees to the losing party in a contract dispute."

---

[1] By the defendant's default, she concedes the factual allegations of the complaint, which are adopted in this Opinion and Order as true. Fed. R. Civ. P. 8(b)(6).

[2] To state a claim under the DTSA, a plaintiff must allege that "(1) it owns a trade secret; (2) the trade secret was misappropriated; and (3) the trade secret implicates interstate or foreign commerce." *Space Sys./Loral*, 306 F. Supp. 3d at 853 (citing 18 U.S.C. § 1836(b)(1)).

[3] Counsel is not seeking reimbursement for the fees and costs associated with filing the current petition. *See* Siachos Decl., ¶ 4.

[4] Federal courts sitting in diversity apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941). In Virginia, Virginia law governs procedural matters. *Jones v. R.S. Jones & Assocs.*, 431 S.E.2d 33, 34 (Va. 1993). Attorney fee awards are procedural. *See Brant v. Schneider*, No. 0863-23-4, 2024 WL 2713307, at *3 (Va. Ct. App. May 28, 2024) (describing the "procedural mechanism" for such an award).

2

*Ulloa v. QSP, Inc.*, 624 S.E.2d 43, 49 (Va. 2006). If, as in this case, the contract provides for an award of fees the requesting party incurred in enforcement and collection efforts, that party bears "the burden of establishing, as an element of its *prima facie* case, that the attorneys' fees it seeks are reasonable in relation to the results obtained and were necessary." *Chawla v. BurgerBusters, Inc.*, 499 S.E.2d 829, 833 (Va. 1998).

With respect to the claim made under the DTSA, the prevailing party is only entitled to recover attorneys' fees if the trade secret was "willfully and maliciously misappropriated." 18 U.S.C. § 1836(b)(3)(D).

If a party is entitled to recover attorneys' fees, the Court has considerable discretion to determine the amount. *See Colonial Williamsburg Found. v. Kittinger Co.*, 38 F.3d 133, 138 (4th Cir. 1994); *Holmes v. LG Marion Corp.*, 521 S.E.2d 528, 533 (Va. 1999). The Supreme Court has emphasized that the district court does not need to undertake a hyper-detailed probe of the requesting attorneys' records. *Fox v. Vice*, 563 U.S. 826, 838 (2011) ("[T]rial courts need not, and indeed should not, become green-eyeshade accountants." Rather the goal "is to do rough justice, not to achieve auditing perfection." In achieving that goal, the district court is permitted to "take into account [its] overall sense of [the] suit, and . . . use estimates in calculating and allocating an attorney's time.").

Courts typically evaluate the reasonableness of attorneys' fees by comparing the requested amount to a lodestar amount, which is a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. The Mills Corp.*, 549 F.3d 313,

3

320 (4th Cir. 2008). Nonetheless, the party requesting a fee bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

When determining the reasonableness of the fees, the Fourth Circuit has instructed district courts to consider the 12 factors ("*Johnson* factors"), though it "need not consider all twelve *Johnson* factors, only those relevant to the particular litigation." *Baust v. City of Virginia Beach*, 574 F. Supp. 3d 358, 364 (citations omitted). The 12 factors are:

>(1) The time and labor expended;
>
>(2) the novelty and difficulty of the questions raised;
>
>(3) the skill required to properly perform the legal services rendered;
>
>(4) the attorney's opportunity costs in pressing the instant litigation;
>
>(5) the customary fee for like work;
>
>(6) the attorney's expectations at the outset of the litigation;
>
>(7) the time limitations imposed by the client or circumstances;
>
>(8) the amount in controversy and the results obtained;
>
>(9) the experience, reputation, and ability of the attorney;
>
>(10) the undesirability of the case within the legal community in which the suit arose;
>
>(11) the nature and length of the professional relationship between attorney and client; and

(12) attorneys' fees awards in similar cases.

*See Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). S*ee also*, *in re Abrams & Abrams, P.A.*, 605 F.3d 238, 244 (4th Cir. 2010) (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974); *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978); *Allen v. U.S.*, 606 F.2d 432, 436 n.1 (4th Cir. 1979)). There is a strong presumption that the lodestar represents a reasonable fee award. *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992); *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).

After the lodestar is calculated, the court (1) must subtract fees for hours spent on unsuccessful claims unrelated to successful ones and (2) award some percentage of the remaining amount based on the degree of the success achieved. *Grissom*, 549 F.3d at 320–21.

### III.  ANALYSIS

Liberty seeks $61,527.26 in attorneys' fees and $1,126.09 in costs. ECF No. 18 at 3; ECF No. 18-1 ¶¶ 3–5, 8.

Liberty claims that attorneys' fees were incurred for:

> (1) investigating Defendant's ongoing violations of the Franchise Agreement and competing tax preparation business; (2) researching and drafting Liberty's Verified Complaint and supporting papers; (3) researching and drafting Liberty's Motion for Preliminary Injunction and supporting papers; (4) communicating with private investigators regarding Defendant's violations of the Franchise Agreement and current residence; (5) communicating with Liberty regarding Defendant's ongoing violations of the Franchise Agreement; and (6) researching and drafting Liberty's Request for Entry of Default and Motion for Default Judgment.

5

ECF No. 18-1 ¶ 4.

Finally, Liberty seeks reimbursement for the cost of private investigator services—including multiple site visits to the defendant's residence and competing tax business and preparing multiple reports to support Liberty's motions—and fees for multiple attempts at service of process and filing. ECF No. 18-1 ¶ 5.

This Opinion and Order sets forth Liberty's entitlement to recover attorneys' fees, the reasonableness of the requested fees, and Liberty's entitlement to costs.

### A.     Entitlement to Fees

#### *i.     Breach of Contract*

Liberty is contractually entitled to reasonable attorneys' fees associated with its breach of contract claim. In the franchise agreement, the defendant agreed "to reimburse the Liberty Parties for all expenses reasonably incurred (including attorneys' fees and costs)" during the enforcement of the terms of the agreement. *See* ECF No. 1-3 § 18.f.

#### *ii.    Willful and Malicious Misappropriation Under the DTSA*

Based on the facts alleged and admitted, the defendant willfully and maliciously misappropriated Liberty's confidential business information, thus justifying the award of attorneys' fees and costs. The defendant sought to draw customers away from Liberty and operated a competitor income tax preparation business called Latina Income Tax. ECF No. 1 ¶¶ 65–70. Additionally, the defendant failed to return client lists, tax return files, and an operations manual to Liberty—all of which constitute trade secrets under the DTSA—despite a notice to return Liberty's

6

confidential information. ECF No. 15 at 11; ECF No. 1 ¶ 57. Furthermore, the defendant has offered no position to justify her violations, and this Court cannot infer any reasonable explanation for her disregard of this litigation. *See Hilton Worldwide, Inc. v. Global Advertising, Inc.*, No. 1:15-cv-1001, 2016 WL 8223436, at *9 (E.D. Va. Apr. 8, 2016) (recognizing a "need to deter" disregard for litigation where the defendant had "not litigated th[e] case in a reasonable manner.").

### B.     Lodestar Calculation

#### i.     *Reasonable Hourly Rate*

In determining the reasonable rates, the Court considers the relevant *Johnson* factors and excludes hours that are "excessive, redundant, or otherwise unnecessary." *Hensley,* 461 U.S. at 433–34; *Barber,* 577 F.2d at 226 n.28.

Analyzing the novelty and difficulty of the questions raised and the skill required to properly perform the legal services rendered, (the second and third *Johnson* factors), the Court observes that the legal issues in this matter were not particularly complicated. *See Route Triple Seven Ltd. P'ship v. Total Hockey, Inc.*, 127 F. Supp. 3d 607, 611, 618, 620 (E.D. Va. 2015) (holding that a case was not complex since the resolution required "straightforward application" of breach of contract principles and the case was disposed with "a relatively simple summary judgment Order.").

The lack of complexity in this case is further supported by Liberty's long history of litigating the non-competition and non-solicitation terms of its franchise agreements in state and federal jurisdictions across the country. *See, e.g., JTH Tax,*

*LLC v. Younan*, No. 2:22-cv-383, 2023 WL 6304865 (E.D. Va. Sept. 27, 2023); *JTH Tax LLC v. Cortorreal*, No. 2:23-cv-355, 2024 WL 3928884 (E.D. Va. Aug. 23, 2024); *JTH Tax LLC v. Caswell*, No. 2:21-cv-339, 2022 WL 3580747 (E.D. Va. Aug. 19, 2022); *JTH Tax LLC v. Thames*, No. 3:20-cv-189, 2020 WL 4587418 (S.D. Miss. July 2, 2020); *JTH Tax LLC v. Sanchez*, No. 1:22-cv-6160, 2023 WL 6813449 (S.D.N.Y. Oct. 16, 2023).

Also, in this case, Liberty did not have to contend with the most expensive aspects of litigation. There were no lengthy hearings, depositions, substantial discovery, or opposed motions. The lack of contentious litigation is a part of the circumstances that the Court considers in "the overall sense of [the] suit." *Fox*, 563 U.S. at 838. Further, "[i]n evaluating the complexity and duration of the litigation, courts consider not only the time between filing the complaint and reaching settlement, but also the amount of motions practice prior to settlement, and the amount and nature of discovery." *Jones v. Dominion Resources Services, Inc.*, 601 F. Supp. 2d 756, 761 (S.D. W. Va. 2009). Here there was almost no motions practice and no discovery whatsoever.

The customary fee for similar work and the experience, reputation, and ability of the attorneys (the fifth and ninth *Johnson* factors) also support a reduced fee. Although it is the attorneys' fee applicant's prerogative to staff every task involved with this breach of contract litigation with partners, that does not mean it is reasonable to bill the partner hourly rate when the work could have been completed by a junior associate. *See Daggett v. Kimmelman*, 811 F.2d 793 (3d Cir. 1987). Many

of the tasks for which the Petition seeks compensation could have been done at a lower rate by a junior lawyer or paralegal with appropriate supervision, and counsel has not sufficiently addressed why that was not done here. "Purely clerical activities, regardless of who performs them, are considered overhead and are not compensable as . . . attorney fees." *Abusamhadaneh v. Taylor*, No. 1:11-cv-939, 2013 WL 193778, at *38 (E.D. Va. Jan. 17, 2013); *see also Gregory v. Belfor USA Grp., Inc.*, No. 2:12-cv-11, 2014 WL 468923, at *6–7 (E.D. Va. 2014) (excluding clerical tasks such as "[p]repar[ing] civil cover sheet" from an attorneys' fee award). "It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available."[5] *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989). Such non-legal work warrants a lesser rate here. *Id.*

Here, counsel contends that Attorney Wall, a partner with more than 10 years of experience, billing at $450 per hour, "[d]raft[ed] and revise[ed]" the Civil Action Cover—a simple administrative form that requires no legal expertise to complete. ECF No. 18-2 at 15. In former Liberty breach of contract cases before this Court, administrative tasks like these were billed by junior attorneys and paralegals, at a much lower rate. *See JTH Tax, Inc. v. White*, 2:22-cv-272, ECF No. 11-2 at 3, 7 (associate with one year of experience billed for "draft[ing] Civil Cover, subpoena, and

---

[5] Liberty also requests fees for tasks billed to law clerks and paralegals, so the Court concludes the attorneys had support for the relevant tasks that could have been billed at a lower rate.

9

financial disclosure for complaint, and look[ing] up local rules to confirm compliance").

Moreover, the fact that Liberty removed the billing entries for the work completed by junior attorneys is more confounding than anything. Attorney Siachos represents that he "made deductions for certain hours and timekeepers to avoid any duplication." ECF No. 18-1 ¶ 8. But the choice to remove those entries does nothing more than complicate the Court's determination of reasonable fees. The Court is unable to discern which of the entries are viable to be billed at a partner rate versus at an associate rate. And since the party requesting fees has the burden of demonstrating that those fees are reasonable, the omission of hours that might have accounted for associate time weighs against Liberty here. *See Robinson*, 560 F.3d at 244. A complete picture of the billing in this matter—including the billed hours for associates—would have been necessary for the Court to gauge the reasonableness of the requested fees. Liberty has not met its burden to provide such an accounting.

The Court therefore finds a reduced hourly rate of 10% is reasonable to account for the inadequacy of the time entries, which reflect partner rates for clerical work and work that typically would have been completed by associates.[6]

---

[6] The Court will not reduce hourly rates for law clerk and paralegal work beyond the 15% discount that Liberty received in billing.

### ii.   *Hours Reasonably Worked*

The next step in determining a reasonable attorneys' fee is calculating the number of hours reasonably worked. Liberty seeks fees for a total of 202.6[7] hours of attorney, paralegal, and law clerk time. ECF 18-1 ¶ 9. Contending that these hours are less than the hours that the attorneys actually worked, Liberty represents that it removed or reduced billing entries that would cause duplicative timekeeping, for a reduction of around $12,000. *Id.* ¶ 6–9. Liberty also removed billing entries attributed to associates, so that it seeks reimbursement only for the attorneys' fees incurred by partners: James L. Messenger, Brian J. Wall, and Benjamin O'Grady. *Id.* ¶¶ 10–11. Liberty's counsel states that they billed Liberty at a 15% discount as well. *Id.* ¶ 11.

To support its fee request, Liberty provides a declaration from Peter Siachos, who is a partner at Gordon Rees Scully Mansukhani LLP ("GRSM") and counsel for Liberty. ECF No. 18-1 ¶ 1. Exhibit A to the declaration lists the number of hours worked by each employee, the employees' hourly rates, and descriptions of the work performed. ECF No. 18-2.

Liberty asserts that its requested relief is reasonable because of the "degree of success" it achieved in the litigation. ECF No. 18 at 11 (citing *Grissom*, 549 F.3d at 321). Given the defendant's non-participation in the lawsuit, the Court is not

---

[7] Counsel for Liberty allege they worked 202.9 hours on this matter, but there is an inconsistency between the declaration, the table included in the declaration and the invoice statements. The values in the table add to 202.6 hours, but the total says 202.9. ECF No. 18-1 ¶ 9. The listed hours on the invoice statements total 202.6 hours. ECF No. 18-2 at 3–4, 6–7, 10–12, 15–16, 19, 23–26, 29–30 (listing all hours worked). For the purposes of this Opinion and Order, the Court will assume that the attorneys billed 202.6 hours.

11

persuaded by this reason. Considering a variety of *Johnson* factors and the Court's duty to subtract "excessive" hours, there is a need to modify the reasonable number of hours to come to a lodestar figure.

The nature and length of the professional relationship between attorney and client (the eleventh *Johnson* factor) likewise suggests a reduction is appropriate. As noted in the petition, GRSM has represented Liberty for over a decade, in numerous cases. ECF No. 18 at 9. Based on the nature of the litigation and this Court's experience with similar cases brought by Liberty, it is reasonable to infer that this was a routine matter. However, the invoice Liberty submitted is inconsistent with that reality. For example, it contains multiple entries where Attorney Wall claims to have "researched Virginia case law" regarding Liberty's Motion for Preliminary Injunctive Relief. ECF No. 18-2 at 10–11. Attorney Wall—and the other partners for whom Liberty is seeking to recover fees—has served as counsel in similar breach of contract claims against former franchisees in Virginia, including before this District. *See* ECF No. 18-3 at 3–4 (citing five other breach of franchise agreement cases where Attorney Messenger was counsel for JTH Tax).

All of this suggests to the Court that counsel recycled work product in this case—or, if not, they could have done so and thereby lowered their costs. With that in mind, it is difficult to find the recorded hours reasonable. Accordingly, the Court finds that a reduction is appropriate.

The remaining *Johnson* factors similarly counsel in favor of a downward adjustment. *See, e.g., Wells Fargo Commercial Distribution Finance, LLC v. Shore*

12

*Saw and Mower, Inc.*, No. 2:23-cv-100, 2023 WL 5153723, at *5–6 (E.D. Va. Aug. 10, 2023) (awarding reduced fees where the legal issues presented were not complex, the defendant did not respond to the pleadings, the plaintiffs filed an uncontested motion for default judgment, and therefore the attorneys did not have to contend with the most expensive aspects of litigation).

In addition, there are instances of vague time entries, which make it impossible for the Court to analyze the reasonableness of the time requests. *See Am. Bird Conservancy v. U.S. Fish & Wildlife Serv.*, 110 F. Supp. 3d 655, 675 (E.D. Va. 2015) ("[I]nadequate documentation is a proper basis for reducing a fee award because it prevents an accurate determination of the reasonableness of the time expended in a case.") (quotation marks omitted and alterations accepted). For example, Attorney Messenger billed 1.3 hours to "[r]eview background factual materials" and 2.5 hours to "[r]eview emails." ECF No. 18-2 at 6, 11. The time entries do not provide any information about how they relate to the litigation, suggesting a lack of billing judgment required by the prevailing party. As Liberty did not offer explanation for these vague entries, the Court finds that the entries are insufficiently documented to warrant an award and deducts the corresponding 3.8 hours from Attorney Messenger's time.

In the interest of avoiding an item-by-item accounting of the attorneys' time entries, the Court will reduce the hours by a reasonable percentage to account for these issues. *See Fox*, 563 U.S. at 838; *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006) ("A district court

13

may exercise its discretion and use a percentage deduction as a practical means of trimming fat from a fee application.") (quotation marks omitted); *Copeland v. Marshall*, 641 F.2d 880, 903 (D.C. Cir. 1980) (holding that it was reasonable for a district court to reduce a fee award without performing an item-by-item accounting of the attorney's hours).

Accordingly, for the purpose of determining the lodestar amount, the Court reduces the billable hours by 15% from 202.6 to 172.21, with an additional reduction to 169 hours after removing the vague entries from Attorney Messenger's hours.

### iii. *Lodestar Summary*

Upon due consideration of the record and the relevant *Johnson* factors, the Court finds the adjusted rates and hours to be reasonable. By multiplying the reasonable hours (169) by the reasonable rates ($382.50 for partners and $125.00 for the other timekeepers), the lodestar is $51,999.25. Thus, the attorneys' fees in the amount of $44,199.36 are awarded after the 15% discount.

### C. Further Award Adjustment

#### i. *Unsuccessful Claims*

Next, the Court must subtract any unsuccessful claims to the extent that they do not relate to the successful ones. *See Hensley*, 461 U.S. at 440. Liberty had one unsuccessful claim: Count V for Unfair Competition. ECF No. 15 at 12 n.6. However, the successful claims and the unsuccessful claim "involve a common core of facts" and are not so "distinctly different" that the factual and legal work in pursuing both claims would warrant a reduction. *See Brodziak v. Runyon*, 145 F.3d 194, 197

14

(4th Cir. 1998); *Morgan v. District of Columbia,* 824 F.2d 1049, 1066 (D.C. Cir. 1987). Furthermore, the excessive or vague hours that may have been related to unsuccessful claims have already been reduced at the lodestar calculation phase. For these reasons, no additional reduction is warranted.

### ii. *Degree of Success*

The plaintiff's degree of success is the "most critical factor" in assessing the "reasonableness of a fee award." *Doe v. Chao,* 435 F.3d 492, 506 (4th Cir. 2006). There is no "precise…formula" for this analysis. *Hensley,* 461 U.S. at 436. Courts "must compare the amount of the damages sought to the amount awarded." *Mercer v. Duke Univ.,* 401 F.3d 199, 204 (4th Cir. 2005) (citation omitted). However, attorneys' fees need not be proportionate to the amount of damages sought. *Randolph v. PowerComm Constr., Inc.,* 780 F. App'x 16, 23 (4th Cir. 2019) (unpublished) ("A difference between damages sought and recovered does not *automatically* require reduction.") (citation omitted) (emphasis in original). Accordingly, the Court will consider the overall degree of success in the litigation as a whole. *Hensley,* 461 U.S. at 440. Here, Liberty received all the relief it requested, so a reduction from the lodestar is not appropriate.

After the reductions described above, the timekeepers are entitled to the following hourly amounts and rates:

| Timekeeper | Requested Hours | Adjusted Hours[8] | Requested Rate | Adjusted Rate | Reduced Award |
|---|---|---|---|---|---|
| James L. Messenger (partner) | 25.9 | 18.8 | $450 | $382.50 | $7,191 |
| Brian J. Wall (partner) | 50.7 | 43.1 | $450 | $382.50 | $16,485.75 |
| Benjamin O'Grady (partner) | 68.2 | 58 | $450 | $382.50 | $22,185 |
| John Blake (law clerk) | 18.8 | 16 | $125 | N/A | $2,000 |
| Jacob Wronski (law clerk) | 38.3 | 32.5 | $125 | N/A | $4062.50 |
| Christina Smith (paralegal) | .7 | .6 | $125 | N/A | $75 |
|  | 202.6 | 169 | Subtotal |  | $51,999.25 |
|  |  | (Client Discount 15%) |  |  | - 7,799.89 |
|  |  |  |  |  | $44,199.36 |

### D.   Costs

Liberty requests $1,126.09 in costs in connection with this matter. ECF No. 18 at 5. "[A]ttorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998). The costs Liberty seeks to recover appear to be for things like repeated service attempts, filing, and private investigator services. ECF No. 18-1 ¶ 5. The invoice is sufficient documentation to support the request for costs. Accordingly, the defendants are liable to Liberty for $1,126.09 in costs.

---

[8] The adjusted hours are rounded to the nearest tenth.

## IV.     CONCLUSION

For the foregoing reasons, Liberty's Petition for Attorney's Fees and Costs (ECF No. 17) is **GRANTED WITH MODIFICATIONS**.

Liberty is **AWARDED** $44,199.36 in attorney fees and $1,126.09 in costs.

**IT IS SO ORDERED.**

/s/ *JKW*

Jamar K. Walker
United States District Judge

Norfolk, Virginia
July 23, 2025